## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

ALVIN WALLACE, SR.,                      )
DAPHNE WALLACE,                          )
                                         )
                 Plaintiffs,             )
vs.                                      )          NO.  CIV-11-1068-HE
                                         )
SHERIFF STEVE RANDOLPH,                  )
individually and in his official capacity )
as Major County Sheriff, and            )
OKLAHOMA DEPARTMENT OF                    )
CORRECTIONS,                             )
                                         )
                 Defendants.             )

## ORDER

Plaintiffs Alvin and Daphne Wallace sued Steve Randolph, the Sheriff of Major County, in his individual and official capacities, and the Oklahoma Department of Corrections ("DOC").  Plaintiffs asserted a conspiracy claim under 42 U.S.C. § 1985(3) against both defendants and also asserted false arrest, excessive force and banishment claims under §1983 against Sheriff Randolph.  Plaintiffs' claim against the DOC was dismissed previously.  Sheriff Randolph has now moved for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to plaintiffs and concludes Sheriff Randolph's motion should be granted.

### Background

The undisputed facts establish the following sequence of events.  On April 10, 2010,

Alvin Wallace Jr. ("Wallace Jr.") had a "party or meeting" with his friends at the home of his parents, the plaintiffs, Alvin Wallace Sr. ("Wallace Sr.") and Daphne Wallace.  On April 16, 2010, based generally on reports of activity at or related to the party,[1] a Major County deputy sheriff sought a warrant to search the Wallace home.  On that same date, a state court judge issued the requested search warrant.  That evening, another gathering of Wallace Jr.'s friends occurred at the Wallace residence and, at approximately midnight,[2] officers executed the search warrant.  Agents from the Oklahoma Bureau of Narcotics and Dangerous Drugs assisted the deputy sheriff in executing the warrant.  The officers attempted to enter the bedroom where plaintiffs were sleeping, encountered resistance from someone pushing on the other side of the door, and ultimately forced their way into the bedroom.  Wallace Sr. and Daphne Wallace were handcuffed.  Daphne Wallace was Mirandized and questioned about drug dealing allegations, but neither Wallace Sr. nor Daphne Wallace were arrested that night.

On April 20, 2010, the Major County deputy sheriff submitted to the state court judge probable cause affidavits seeking the issuance of arrest warrants for both Wallace Sr. and Daphne Wallace.  The warrants were issued, based on claimed possession and distribution

---

[1]*The details of the reported activity are disputed in various respects.  However, the apparently undisputed aspects included reports to the authorities of underage drinking, sales of controlled substances by some of the attendees, smoking marijuana,  and the rape nearby of a minor female, some time after midnight, by a man under the influence of drugs allegedly obtained at the party .*

[2]*The form of the search warrant, particularly its apparent authorization of a nighttime execution, is far from ideal.  However, such problems were not raised by plaintiffs and  do not impact the claims plaintiffs press here.*

2

of controlled substances within 1000 feet of a school, contributing to the delinquency of a minor, and maintaining a disorderly residence.

After issuance of the arrest warrants, Sheriff Randolph contacted Robert Denton, the chief of security at the James Crabtree Correctional Center, where Wallace Sr. was employed. The sheriff checked to see if Wallace Sr. was at work, so that he could be arrested under controlled conditions. Wallace Sr. was apparently not at work at the time but, during that conversation, Denton asked Sheriff Randolph to get Wallace Sr.'s badge, uniform, equipment, and identification and see that it was returned to the employer.

On April 21, 2010, plaintiffs were arrested at their home. At the sheriff's office later that day, Department of Corrections personnel, including Denton, approached Wallace Sr. and obtained a signed resignation letter from him.[3] Plaintiffs allege that, also while they were at the sheriff's office, Sheriff Randolph ordered the Wallace's to leave the city due to their reputation as drug dealers. Defendants dispute the allegation.

The various criminal charges against plaintiffs were eventually dismissed, apparently pursuant to an agreement with the authorities.

Other factual matters or disputes are addressed below in the context of the particular arguments to which they pertain.

<u>Analysis</u>

Plaintiffs allege four claims in their complaint against defendant Randolph in both his

---

[3]*The circumstances as to the resignation letter are disputed. Wallace Sr. claims he was forced to resign and had no choice. Denton asserts Wallace Sr. was not forced to resign.*

individual and official capacities – false arrest, excessive force and banishment under § 1983, and conspiracy under §1985(3).  They concede their excessive force claim in their response brief.

False Arrest

Plaintiffs claim they were "falsely arrested because the probable cause asserted in the Application for Search Warrant Affidavit ("Affidavit for Search Warrant") contained information that was knowingly false and fabricated, and Sheriff Randolph was aware of its inadequacies at the time the arrest Warrant was obtained."  Plaintiffs' response, p. 12.  Their response repeatedly confuses the affidavit for the search warrant with the affidavit for the arrest warrants.  They discuss alleged misstatements in the search warrant but then close their argument with "Clearly, Plaintiffs' Fourth Amendment rights were violated because information contained in the Affidavit for Arrest knowingly and recklessly misled the court." Plaintiffs' response, p. 13.

It appears plaintiffs may be arguing in part that the initial search was invalid because the search warrant was issued on the basis of information that was false and critical to the finding of probable cause and that, as a result, the arrest warrants were invalid as they were based on evidence obtained during the alleged illegal search. Plaintiffs have no cited authority demonstrating that they can assert a § 1983 claim for false arrest based on a prior illegal search.[4]  Assuming they can, their claim still fails.  While plaintiffs have submitted

---

[4]*It is unclear why plaintiffs did not assert an illegal search claim.*

4

evidence which might raise a question as to whether certain information in the search warrant affidavit was inaccurate, they have not shown that the allegedly false information was critical to the finding of probable cause. *See* <u>Thorpe v. Ancell,</u> 367 Fed. Appx. 914, 921 (10th Cir. 2010) (unpublished) ("The law is well-settled: a constitutional violation exists only when an affidavit contains information that is deliberately false or in reckless disregard for the truth *and* the remaining material contains insufficient content to support a finding of probable cause.").

Plaintiffs claim the search warrant affidavit submitted by Deputy Holdeman was "false, embellished and totally contradicted by the written statement" signed by KMN. Plaintiff's response, p. 4.  They contend that, although the officer stated in the affidavit that KMN witnessed Alvin and Daphne sell pills to a man in Daphne's bedroom, KMN wrote in her statement that she saw Alvin walk a man into his mother's room and "then he walked out 10-15 minutes later with pills in his hand," and "Thats all I saw at the house."  Plaintiffs' response, p. 3; plaintiffs' Exhibit 1.  They also note that, while the officer stated that "[t]he drug and alcohol party that was hosted by Daphne Wallace directly affected and instigated the rape of KMN," defendant's Exhibit 2, KMN's statement did not mention that Daphne hosted the drug and alcohol party or that she or Wallace Sr. were even home on April 10 or 11.  Her statement did not, they argue, contain any information that either plaintiff had committed a crime or that the pills "were a controlled substance."[5]  Plaintiffs' response, p. 4.

---

[5]*Plaintiffs are correct that the written statement of KMN does not mention Daphne Wallace's location when the drugs were allegedly sold on April 11, 2010.  Defendants respond that "Plaintiffs*

The warrant obtained was not, however, for plaintiffs' arrest, but to search their residence for evidence of a crime or crimes.  While the information plaintiffs challenged might have been critical to a finding that probable cause existed to arrest the plaintiffs, it was not crucial to a finding of probable cause to search their home and plaintiffs do not argue otherwise.  *See* United States v. Biglow, 562 F.3d 1272, 1281 (10th Cir. 2009) ("Probable cause 'requires only a probability or substantial chance of criminal activity . . . .'") (quoting New York v. P.J. Video, Inc., 475 U.S. 868, 877-78 (1986)).

Turning to the other affidavits -- the ones submitted to obtain the arrest warrants – plaintiffs' argument essentially appears to be that the affidavits fail to include sufficient information to establish probable cause to arrest the plaintiffs.[6]  They assert that the affidavit to arrest Wallace Sr. is faulty because it does not include allegations that he committed a crime on April 11, 2010, or was even home that evening.  Plaintiffs challenge the affidavit submitted to obtain Daphne Wallace's arrest warrant on similar grounds.  They argue that it "contains absolutely no information that a crime was committed by Daphne," plaintiffs' response, p. 6, relies in part on KMN's asserted statement that Daphne Wallace was selling

---

*provide no evidence whatsoever ... that the Affidavit and Application for a Search Warrant was based exclusively on the written statement of KMN rather than on interviews with KMN and another female." Defendant's reply, pp. 1-2. Attached to defendant's reply brief is the sheriff's deposition testimony in which he states that more than one person was interviewed "to obtain the probable cause affidavit." That does not establish what KTM might have told Deputy Holdeman in addition to what was included in her written statement or what might have been derived from the statements of others. However, the court does not have to determine the validity of the challenged statements in the affidavit to resolve the motion for summary judgment.*

*[6]The affidavits submitted for each plaintiff's arrest warrant were essentially identical.*

6

prescription drugs out of her bedroom and erroneously states that KMN identified the pills sold by Wallace Jr. on April 10 as Xanax.

"Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." Bruner v. Baker, 506 F.3d 1021, 1026 (10th Cir. 2007) (quoting Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir.1996)).  Plaintiffs are correct that the affidavit focuses on Wallace Jr. and Daphne.  However, Wallace Sr. is identified as one of the homeowners who was living in the residence (his uniform was handing up in one of the bedrooms).  Disregarding the statements alleged to be false, the affidavit, at a minimum, provides probable cause for Wallace Sr.'s arrest for contributing to the delinquency of a minor and maintaining a disorderly residence, and for Daphne Wallace's arrest for all the charges.  *See* Defendant's Exhibits 8,9.

The affidavits for both the search warrant and the arrest warrants, when stripped of the alleged false information, support findings of probable cause. Therefore defendant Randolph is entitled to summary judgment on plaintiffs' false arrest claims in both his individual[7] and official capacities. *See* Camuglia v. City of Albuquerque, 448 F.3d 1214, 1223 (10th Cir. 2006) ("A municipality may not be held liable where there was no underlying

---

[7]*It is also doubtful plaintiffs provided sufficient evidence to create a question of fact as to whether  Deputy Holdeman included the alleged misstatements knowingly or recklessly or whether Sheriff Randolph personally participated in the asserted constitutional violation.  See Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ( "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation. Supervisory status alone does not create § 1983 liability.") (internal quotations and citation omitted).*

constitutional violation by any of its officers.") (quoting <u>Hinton v. City of Elwood</u>, 997 F.2d 774, 782 (10th Cir.1993)).

<u>1985(3) Conspiracy</u>

"The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." <u>Tilton v. Richardson</u>, 6 F.3d 683, 686 (10th Cir. 1993). "[H]owever, § 1985(3) does not 'apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Id.* (quoting <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 101-02 (1971)).

Plaintiffs claim Sheriff Randolf "conspired with Chief Denton to coerce Alvin Sr. to resign." Plaintiffs' response, p. 8. They cite as proof of the conspiracy "Sheriff Randolph notifying Chief Denton when Alvin Sr. would be arrested" and when he was in custody, the sheriff's retrieval of Wallace Sr.'s uniforms and badges and his allowing Chief Denton to visit Wallace Sr. while he was in jail "to coerce Alvin Sr. to involuntary resign." *Id.* at pp. 8-9. They also assert that Sheriff Randolph "knew Reed and Chief Denton were to coerce Alvin Sr. to resign." *Id.* at p. 9.

Plaintiffs mischaracterize the evidence. Contrary to their assertions, the Sheriff testified that he communicated with the Chief Denton regarding Wallace Sr.'s arrest warrant "to see if he could be arrested on controlled conditions at the prison," plaintiffs' Exhibit 4, p. 27, and had not previously talked to Chief Denton about Wallace Sr. *Id.* at pp. 27-28. The

cited evidence does not reflect that the sheriff called the DOC to notify Chief Denton when Wallace Sr. was going to be arrested.  It does not demonstrate that the Sheriff knew (until after the fact) about the resignation letter or knew Chief Denton came to the jail to obtain Wallace Sr.'s resignation. *See id.* at pp. 31-32.

Plaintiffs have offered no evidence which would support an inference that Sheriff Randolph and Chief Denton conspired "for the purpose of depriving [them] of equal protection of the laws or equal privileges and immunities under the laws." <u>Dixon v. City of Lawton</u>, 898 F.2d 1443, 1447 (10th Cir. 1990).  They have cited no evidence demonstrating a meeting of the minds or agreement between Sheriff Randolph and Chief Denton or concerted action. *See* <u>Abercrombie v. City of Catoosa</u>, 896 F.2d 1228, 1230-31 (10th Cir. 1990). "[T]here is nothing to give rise to the inference that they conspired." *Id.* at 1231.

Plaintiffs also have not come forth with sufficient evidence of a racial or class-based discriminatory animus to allow their conspiracy claim to proceed to a jury.  They assert that on the same day they were released from jail Sheriff Randolph told them to move out of town because of their reputation as drug dealers and that "[r]eferring to blacks as 'drug dealers,' particularly when they are not, is evidence of racially discriminatory animus and racial stereotyping." Plaintiffs' response, p. 8.  That statement alone,  without <u>anything</u> else, is not sufficient in light of the record before the court to demonstrate that Sheriff Randolph and Chief Denton conspired to force Wallace Sr. to resign from his job or that a race-based, discriminatory motive underlay their supposedly conspiratorial activities.

As plaintiffs have failed to offer sufficient evidence of either an agreement or race-

based animus to create a fact question regarding the existence of a § 1985(3) conspiracy, defendant Randolph is entitled to summary judgment on plaintiff's conspiracy claim in both his individual and official capacities.

Banishment

Plaintiffs claim Sheriff Randolph banished them.  They assert that Sheriff Randolph "did **not** suggest that the Wallaces leave town, he **ordered** the Wallaces to leave Ringwood because of their reputation as drug dealers."  Plaintiffs' response, pp. 7-8.

Again plaintiffs have not submitted sufficient evidence to create a material fact dispute as to whether they were banished from Ringwood.[8]  Plaintiffs testified that Sheriff Randolph told them they had "better leave town" and "should move."  Defendant's Exhibit 3, p. 146; Exhibit 1, p. 203.  However, that language is insufficient by itself to be considered an order with which a reasonable person  would have felt compelled to comply, particularly in the absence of evidence that the sheriff repeated the statement or took any action to enforce the alleged banishment order.[9]

Assuming there was sufficient evidence that plaintiffs had been ordered out of town, their banishment claim would still fail. The parties frame the claim as one based on an asserted restriction of their constitutionally protected right to travel.  However, the "substantive due process rights to travel and to establish a residence . . . apply only to

---

[8]*The Wallaces moved to Oklahoma City in June 2010.*

[9]*While defendant states in his reply brief that he did not suggest to the Wallaces that they leave town, he does not cite to any evidence to that effect.*

*interstate* travel . . . ." <u>D.L. v. Unified School Dist. No. 497</u>, 596 F.3d 768, 776 (10th Cir. 2010).  Plaintiffs do not claim that the sheriff's alleged order restricted their right of interstate travel.

Finally, even if a justiciable question of fact had been made out, the sheriff would be entitled in his individual capacity to qualified immunity on plaintiff's banishment claim.[10] The parties did not cite any cases on point and the court also was unable to find much guidance in the case law.  In these circumstances, it seems clear enough that the "contours of the right [were not] sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." <u>Boles v. Neet,</u> 486 F.3d 1177, 1184 (10th Cir. 2007) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).[11]

Plaintiffs' banishment claim therefore fails and summary judgment on the claim will be entered in defendant Randolph's favor in both his individual and official capacities.

Accordingly, for the reasons stated, defendant Randolph's motion for summary judgment [Doc. # 27] is **GRANTED**.

---

[10]*Contrary to plaintiffs' assertion, the doctrine of qualified immunity is not limited to municipal employees, but also applies to county employees.*

[11]*Plaintiffs' "official capacity" claim against the sheriff is essentially a claim against Major County and the defense of qualified immunity is not available to a county.* <u>*Christensen v. Park City Mun. Corp.,*</u> *554 F.3d 1271, 1278 (10th Cir. 2009).  However, the absence of an underlying constitutional violation precludes a finding of liability as to the county.*

**IT IS SO ORDERED**.

Dated this 23rd day of January, 2013.

JOE HEATON
UNITED STATES DISTRICT JUDGE